IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEON BONNER, | :<br>: |
| Plaintiff, | :<br>: |
| | : Civil Action File No.: |
| v. | :<br>: |
| DEPARTMENT OF VETERAN AFFAIRS | :<br>: **JURY TRIAL REQUESTED** |
| | : |
| Defendant. | |

## COMPLAINT

COMES NOW, Plaintiff Leon Bonner ("Plaintiff" or "Bonner"), by and through his undersigned counsel, hereby files this Complaint against Defendant Department of Veteran Affairs the Court as follows:

## JURISDICTION AND VENUE

1.

This is an action for: (1) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. ("Title VII"); (2) discrimination based on race in violation of 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1981 ("Section 1981"); and (3) retaliation for engaging in conduct protected under Title VII, Section 1983, as well as Section 1981.

2.

The jurisdiction of this Court is invoked pursuant to Title VII, 42 U.S.C. § 1983, 29 U.S.C. § 2611, 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3.

The unlawful employment practices alleged in this Complaint were committed within the Northern District of Georgia. Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as every act of which Plaintiff complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

4.

The conduct of the Defendant, which gave rise to Plaintiff's complaint, was done under the color of state and local law.

5.

All of Defendant's discriminatory and retaliatory conduct described herein was accomplished pursuant to unofficial policy, practice and custom of the Department of Veteran Affairs.

**PARTIES**

6.

Plaintiff, a black male, was at all times relevant to this action a citizen of the United States entitled to bring an action of this type and nature. He resides in the State of Georgia.

7.

The Department of Veteran Affairs is subject to the jurisdiction of this Court. The Department of Veteran Affairs may be served with process by serving its Law Department at Office of Chief Counsel, U.S. Department of Veterans 3322 West End Avenue, Suite 509, Nashville, TN 37203.

8.

Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

9.

Defendant Department of Veteran Affairs is an "employer" within the meaning of 42 U.S.C. § 2000e(b). Defendant Department of Veteran Affairs has more than five hundred (500) employees.

10.

Defendant's conduct described herein was accomplished pursuant to the unofficial policy and custom of the Department of Veteran Affairs.  Specifically, the Department of Veteran Affairs has a policy or custom of discriminatory practices against black employees.

### ADMINISTRAIVE PROCEDURES

11.

Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 7, 2021.

12.

The EEOC issued a "Notice of Right to Sue" on July 25, 2022, entitling an action to be commenced within ninety (90) days of receipt of that notice.

13.

Plaintiff has brought suit within ninety (90) days of receipt of the Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

14.

Plaintiff began working for the Marietta National Cemetery ("MNC") in June 1999 as a Cemetery Caretaker. In 2006, he was relocated from MNC to the Georgia National Cemetery ("GNC") in Canton, Georgia.

15.

In 2017, Plaintiff was promoted to Lead Heavy Equipment Operator at GNC.

16.

As a Lead Heavy Equipment Operator at GNC, Plaintiff's primary responsibilities included supervising, directing and managing the internment crew

and independent contractors, designation of duties to the internment crew and independent contractors, excavation, general upkeep of the cemetery and gravesites, and administrative work as needed.

17.

At all times relevant, Francisco Gonzalez ("Gonzalez") was his direct report at GNC.

18.

Plaintiff applied for the vacancy of Cemetery Caretaker Supervisor position in May 2020 via USAjobs.gov website.

19.

After applying, Plaintiff received correspondence stating that the application was received and that he was eligible for the promotion based upon the information received in his application package.

20.

During the application process, Plaintiff had inquired multiple times of Gonzalez-his then direct supervisor-about the selection process.

21.

The purpose of Plaintiff's inquiries of Gonzalez was to obtain some transparency on the process. Plaintiff's inquiries were never answered.

22.

In August 2020, Plaintiff was informed by Gonzalez that he was not selected for the position.

23.

Plaintiff was advised that Christopher Rathbun ("Rathbun") was selected.

24.

To Plaintiff's surprise, he learned that Rathbun was far less qualified than he was for the supervisor position.

25.

Rathbun had only six years of experience overall and only about four years of supervisory experience.

26.

At the time Plaintiff's application was submitted, he had over twenty years in the industry and over a decade in a supervisory role.

27.

When Plaintiff approached Gonzalez with this information, he was told that Rathbun "scored higher" on his resume and had supervisory experience.

28.

Gonzalez's explanation was inconsistent with the facts. Plaintiff's resume clearly shows that he had more than double the experience of Rathbun.

29.

Plaintiff informed Gonzalez that he believed that he was discriminated against in favor of a white male candidate. Plaintiff's concerns of race discrimination were ignored by Gonzalez.

30.

To make matters worse, after Rathbun was hired, Plaintiff was tasked by Gonzalez to train Rathbun in his new position.

31.

Specifically, Plaintiff was tasked with training Gonzalez on machinery, polices, procedures, personnel management and administrative tasks, all of which one would expect Rathbun to possess prior to being extended the Cemetery Caretaker Supervisor position.

32.

Gonzalez's decision to force Plaintiff to train Rathbun was for the sole purpose of further humiliating and retaliating against Plaintiff for bringing the race discrimination issue to Gonzalez's attention.

33.

Notably, there has never been a black male that has permanently held the position of Foreman or Cemetery Caretaker Supervisor at the GNC.

34.

In addition to being discriminated during the selection process for the Cemetery Caretaker Supervisor, Plaintiff was discriminated against with respect to the training opportunities available at GNC.

35.

At every one of Plaintiff's independent development plan ("IDP") meetings where Plaintiff is provided the opportunity to discuss his career advancement, Plaintiff requested to participate in opportunities for training.

36.

At all times relevant, Plaintiff requested to participate in training opportunities no less than twice a month.  Shortly before filing his EEOC claim, Plaintiff increase his requests from bi-weekly to weekly.

37.

Despite his efforts, Plaintiff was regularly denied training opportunities.

38.

Training is very important to employees because it makes them more marketable for promotions and other opportunities within the Department of Veteran Affairs.

39.

Although Plaintiff had been repeatedly denied these training opportunities, his white female co-worker Susan Thompson ("Thompson") was often approved for the same training.

40.

At all times relevant to this matter, Thompson's job tasks required her to work in the field at least 75% of the time.

41.

When an employee of GNC is in the field, he or she cannot simultaneously participate in training.

42.

Despite the requirement that Thompson work at least 75% of the time in the field, that requirement was often waived in favor of allowing her to participate in training.

43.

When Plaintiff was denied the opportunity to train, he was advised that it was because he was "needed in the field."

44.

When Thompson was able to participate in training in lieu of working in the field, it required Plaintiff and other male workers to pick up her slack.

45.

Not only was Plaintiff denied training a promotion opportunities, other black male co-workers were denied the same.

46.

Due to Defendant's conduct, Plaintiff has suffered emotional pain and suffering, mental anguish, humiliation and damage to his reputation.

47.

All of Defendant's unlawful actions were willful, malicious, deliberate and undertaken with the specific intent to harm Plaintiff and/or violate his federally protected rights. Additionally or in the alternative, Defendant acted with reckless disregard toward Plaintiff and his federally protected rights.

## COUNT ONE
## RACE DISRIMINATION IN VIOLATION OF TITLE VII

48.

The employment relationship between Plaintiff and Defendant falls within the meaning of 42 U.S.C. § 2000e et seq., such that a cause of action exists where discrimination based on race is alleged to be the causative agent of an adverse action directed to the employee by the employer.

49.

The discrimination to which Plaintiff was subjected to by Defendant based on race was in violation of 42 U.S.C. § 2000e et seq., thus entitled him to all appropriate relief provided under the statute.

50.

Defendant's act of failing to promote Plaintiff, requiring him to train his superior and denying him access to training constituted discrimination based on race such that Defendant intentional actions adversely impacted Plaintiff's terms, conditions and privileges of employment.

51.

As a direct and proximate result of Defendant's intentional and unlawful conduct, which was intended to cause Plaintiff harm, and/or was committed with reckless disregard of the harm caused to Plaintiff, and in derogation of his federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to her reputation, and other past and future pecuniary losses.

52.

Defendant's intentional and illegal conduct entitles Plaintiff to compensatory damages and any and all other remedies available under Title VII.

## COUNT TWO
## RACE DISRIMINATION IN VIOLATION OF SECTION 1983

53.

The employment relationship between Plaintiff and Defendant gives rise to a cause of action where race discrimination is alleged to be the causative agent of an adverse action within the scope of the employment relationship.

54.

Defendant is a governmental entity subject to the Fourteenth Amendment to the US Constitution (hereinafter "Fourteenth Amendment"), as applied through 42 U.S.C. § 1983, and is a "person" as defined by relevant case law interpreting 42 U.S.C. § 1983.

55.

Defendant's discrimination against Plaintiff based on race violated the Equal Protection Clause of the Fourteenth Amendment, by treating Plaintiff, a black male, less favorably than Defendant's white employees. Plaintiff is thus entitled to all appropriate relief provided under 42 U.S.C. § 1983.

56.

Defendant's act of failing to promote Plaintiff, requiring him to train his superior and denying him access to training constituted discrimination based on race such that Defendant City of Atlanta intentional actions adversely impacted Plaintiff's terms, conditions and privileges of employment.

57.

Defendant implemented policies and customs that discriminated on the basis of race, and violated Plaintiff's rights under the Fourteenth Amendment, enforced via 42 U.S.C. § 1983.

58.

As a direct and proximate result of Defendant's intentional and unlawful conduct, which was intended to cause Plaintiff harm, and/or was committed with reckless disregard of the harm caused to Plaintiff, and in derogation of his federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to his reputation, and other past and future pecuniary losses.

59.

As a direct and proximate result of Defendant's unresponsive and inaction to Plaintiff's complaint concerning discrimination based on race, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to his reputation, and other past and future pecuniary losses.

60.

Defendant's intentional and illegal conduct entitles Plaintiff to compensatory damages and any and all other remedies available under 42 U.S.C. § 1983.

## COUNT THREE
## RETALIATION IN VIOLATION OF TITLE VII

61.

The employment relationship between Plaintiff and Defendant falls within the employee to employer meaning of 42 U.S.C. § 2000e et seq, at the time of the allegations set forth in this Complaint.

62.

The unlawful retaliation to which Plaintiff was subjected by Defendant is in violation of 42 U.S.C. § 2000e et seq., thus entitling his to all appropriate relief provided under the statute.

63.

Defendant retaliated against Plaintiff by refusing to provide information about the application process and ultimately requiring him to train his superior.

64.

As a direct and proximate result of Defendant's intentional and unlawful conduct, which was intended to cause Plaintiff harm, and/or was committed with reckless disregard of the harm caused to Plaintiff, and in derogation of his federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to his reputation, and other past and future pecuniary losses.

65.

The retaliation to which Plaintiff was subjected by Defendant was in violation of 42 U.S.C. § 2000 et seq., thus entitling him to all appropriate relief provided under the statute.

## COUNT FOUR
## ATTORNEYS FEES

66.

Plaintiff is entitled to an award of attorney's fees and expenses of litigation on each and every cause of action alleged herein, as provided by statute and because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for:

1) General damages based on Defendant's conduct as alleged herein in an amount to be determined at trial;

2) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon in an amount to be determined at trial;

3) Reasonable attorney's fees and expenses of litigation;

4) Trial by jury as to all issues;

5) Prejudgment interest at the rate allowed by law;

6) Declaratory relief to the effect that Defendants have violated Plaintiff's statutory rights; and

7) All other relief to which Plaintiff may be entitled.

By:     WATSON LAW LLC

**/s/ A. Zakiya Watson-Caffe**
A. Zakiya Watson-Caffe
Georgia Bar No. 441773
800 Kennesaw Avenue NW, Suite 220
Marietta, Georgia 30060
Telephone: (404) 600-1771
Email: zak@zwatsonlaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 in the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

By:     WATSON LAW LLC

**/s/ A. Zakiya Watson-Caffe**
B. Zakiya Watson-Caffe
Georgia Bar No. 441773
800 Kennesaw Avenue NW, Suite 220
Marietta, Georgia 30060
Telephone: (404) 600-1771
Email: zak@zwatsonlaw.com

*Counsel for Plaintiff*